The next case this morning is 5-25-0568, People v. Nichols. Arguing for the appellant is Robert Robertson. Arguing for the appelee is Katrina Kuhn. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning. Good morning. Good morning. We were running a little bit behind. The first couple of our cases went quite a bit over our scheduled time. But that being said, if additional time is needed, I'm usually pretty lenient about granting it. So we'll see how this one goes. But we're always going to shoot for keeping on schedule. Mr. Robertson, if you're ready, you may begin. Thank you very much, Your Honor. May it please the court. Kelly Nichols currently sits in a maximum security prison with 11 convictions of two of the most vile offenses imaginable. With the purported victims being the two people most important to her in this entire world, the two daughters she raised, lived for, doted on for over two decades, still dotes on them. These convictions here were based on the most threadbare of evidence I've ever seen. It's held together with improper, tenuous inferences. And they weren't faithful to the two biggest hallmarks in our criminal justice system, the presumption of innocence and proof beyond a reasonable doubt. Now, I know a proof beyond a reasonable doubt is something that, you know, every almost in every criminal case, they're saying, hey, look at this proof beyond a reasonable doubt. It's never enough. It's never enough. In this case, in this case, this case is truly bereft of proof on so many levels on every conviction. You know, this even how this case came in, you know, this was this is a case where there was a search warrant unconnected to Miss Nichols. They seized every device in the Nichols home and ran an extensive digital forensic search. Unbelievably in-depth search. I mean, this stuff pulled up files that weren't even visible, viewable or accessible on those devices. And then over 100,000 images, millions of files, it spits out a handful, a variable handful that spanned a number of years. And these are these are problematic. You know, and those and those and those photos, which were like point zero zero zero two percent of you stretched it out or did the math were were were photos of the kids doing involved nudity. No question. But if the kids doing normal children activities, waiting to be changed, playing, pretending to be animals, whether it's horsey or unicorn, singing in the shower or bouncing on the new provost rick for Christmas. You know, there wasn't any focus on the genitalia. There wasn't any posing of the children. There were no adults. There's no coyness. There was no hint of anything sexual. These were these were family photos intermixed with 100,000 other family photos. And, and as an after this case came in, it just kind of steamrolled. The I want to start 1st with the, the manufacturing conviction, because that's the class X and that's what starts. This case starts with only 1 witness testified. As to who created any of these images. And that was the investigating detective, the lead detective, the person most vested in this case. Probably from the, from the prosecution side, the lead detective is always the guy and he, he, he sweats. He toils. He brings it to this to the prosecution. And what did he say? He said on this pogo stick video, the class X, that it was likely. That Kylie Nichols, the 13 year old daughter took that video. He didn't say, I'm not sure. He said it was likely that Kylie took the video. He's the only 1 to testify to that. I mean, you see, let that sink in. I mean, and it wasn't some kind of slip of the tongue. It wasn't come any come Johnny come lately idea. You know, this was this was. Something that was he testified to, and it was written in his police reports from the beginning of this case. There was a ton of, you know, no 1 testify that Miss Nichols took this video. No, 1, no 1 indicated in any respect that there was no admission buyer to taking this video. The forensic evidence didn't link her to this video. If anything, the forensic evidence offered a trial. I don't even talking about the post trial motion here. That evidence at trial showed it was Kylie who took this video. The Matthews detective math, you could say only a trial was taken with an iPhone 5s. Okay. Didn't know whose phone it was, but he admitted on the stand that the. During the time period, the pogo stick video was taken when Kylie was 13 years old. The she was using that same type of phone, the iPhone. 5s to take pictures at that time. Like, during that exact time, she was using it to take a ton of pictures. You know, it was under her name was under Kylie's name. It was and even detective Matthews admitted. Hey, Kelly Nichols did not label these files. There's no indication. You know, what we have with, I mean, this was just, I mean, the defense presented a mountain of evidence is that basically these are great people. They've had a great life. They're everyone testified like their ideal parents. Like the kids testified, they're now adults. They're ones that valedictorian or dental school. The other is a cardiac ICU nurse. They both came in and testified for their parents. Parents never did anything like this. You know, the trial court really relied on improper propensity improper propensity evidence and really some tenuous and speculative inferences. Now, when I say improper propensity, I'm not saying that any propensity evidence and any propensity inference is bad. The state didn't offer any propensity evidence. They specifically said they weren't going to. And you have to have a reason for the propensity evidence. Like, well, we notice here that the child is dressed in the same manner and it was taken in the same spot in this photograph that the defendant admits taking. So we're going to extrapolate from that, that the defendant took the other fine. You're not phrasing it, but there was no reasoning, no rationale like this. And and it's it's really the idea that, you know, someone took this because took took this specific video. She has to prove it took this specific video based on the fact that. And on some occasion, she may have taken a different photo involving some unidentified form of nudity. That we never seen what that photo is. It's never been identified. It's just it's just it's it's such an inferences to be meaningless. Now, many of the inferences were really extended. And one of the things we did in our brief right didn't brief. As I tried to give the court a ton of examples, like cases where I actually thought the inferences on the cases that were all reversed by the court or by the Supreme Court. Where all the references were all the inferences were stronger in my mind, but they were like, you know, you can't convict the guy because his clothes were dirty of stealing pigs. You can't convict someone of robbery because of exclusive recent unexplained possession of the property. You can't convict someone of drug conspiracy because they're saying the same type of pager as someone else. All those things just just ignore. The possession cases saw suffer from the same infirmities. That's 11 convictions of Miss Nichols. There's no testimony. None that she ever looked at any of these images. No testimony that forensically that she ever access these videos. These all these were on shared devices shared by the entire family. Now, the devices they were stored on every member of the family used it. And I might say, I must say this that beyond that, there is a ton a ton of factors that courts have gone through to show knowledge to show knowing possession where they say, look at all this. Look at this. Look at this. None of those were present here. They went through every search history on those devices. Hundreds of thousands of computer searches, not one to a child pornography website, not one related to child pornography, not one sending of child pornography, nothing, nothing. You know, and you look at the, the, the way that these files were organized. And which is a complete lack of organization. You have these files with generic names stuck in generic folders. And, and, and as a result, you can't be sure that anyone has ever looked at these files. And that's what you have to prove. You have to know that they know about these specific files. And we laid all these arguments out in detail and respectfully, the state didn't respond to most of these arguments. I mean, the doctor duct a few, but flat out didn't respond at all. And that's waiver and I'm like, I don't want to waiver argue where you were technically, but that also speaks volumes. I implore this court to reverse all convictions of Miss Nichols and do what I believe in reverse. What I believe is it has been a terrible, terrible injustice. Thank you very much. Thank you. Just as long, just as Clark, any questions. I'm looking at the Lamborne factors and recalling what the trial court said about them. It would seem that he considered them and your argument with how he applied it. Is that fair? I think that I think I think it's. And I'm sorry, I didn't get to the Lamborne factors. I mean, I think that's an important issue as well. I wasn't trying to neglect it. I was just. It's just a matter of time. I'll take it. It's criticism. I didn't mean that at all. It's just the 1st question I had written down. Yes, the trial court did apply the did apply some of the Lamborne factors. The trial court did not talk at all about sexual coyness, which is a really an important 1, whether there's something about the photo that indicates that the subject is wanting to is willing or wanting to engage in sex. And, I mean, that's understandable because here you have someone playing a pogo stick or playing animal or singing in the shower, just being a baby. But my main problem with the. Trial courts analysis is it seemed like. Every factor was the nudity was double counting like everything became inappropriate because there was nudity and the courts number of courts have talked about nudity being its own factor. And you really don't double count and I really think the trial court saw nudity as almost equivalent to lewdness unless there was an explanation for. I'm sorry. I just need to take a little bit of water. 1 second where if there was nudity without an explanation for. The, the photo, or the image in the image. Then that was automatically lewd, so I don't, I don't think it was. I mean, it's obviously a de novo standard, but is it bigger to consider for example, on the pogo stick. Video the camera zooming in on the torso of the child. No, no, no air consideration. Oh, that's definitely a fair consideration. I think that was the only thing that came close to focus, but then there was momentarily and that was a zoom out. And again, and again, um. I think I think that that's 1 factor. I'm sorry, I didn't no, no, I wanted to let you finish. Oh, yeah, no, I think I obviously I think that's yes, 1 factor that that that did happen and we noted that in our brief that it happened, but it was. It was back to a zoom out then after that someone trying to focus. There could have been other reasons other than a focus on the genitals. Well, then turn to the photo of the kids on the bed and the focus of the genitals in that. Image, is that a fair consideration? I think that, you know, you're always I'm never going to say that trial court didn't fairly consider something. But I think it was erroneous in considering the age of the children, the angle of the photo. I don't think there was a focus of the children on the genitals. They caught their whole body. And I mean, it's trial courts rationale for a lot of that was, look, there's there's no changing. There's no indication that the children are wet. But at that point in life, and that 1. Assembly line of getting a kid ready and dressing the kid and going forward. You're going to get a snapshot. I mean, they're obviously there's it's a made bed. There's towels. There's clothes on the bed. It looks like, just like the kids were put down. They were, they were naked, but they were ready to be dressed by by their parents at some point. And I think is it fair to consider. The posing and the vivid depiction of how the toilet paper is attached to the bodies of the girls. Is that a fair consideration? They've got their, they got their backsides pointed to the camera. And and turning their upper torso towards the camera and what seems to be. Something concentrating on certain aspects of it, rather than the playfulness aspects of it. I'm just asking if if that's a fair consideration. I think, again, I will never say justice Clark and I mean, this is where I respect that. It's not a fair consideration. But I think looking at the picture as a whole. It's not 1, there were testimony about these girls pretending to play animals. And I think the natural focus of playing animals, the girls were imitating animals and looking at their tail, looking at their, that's the 1 way they were pretending to be animals. So, I think that that's that's an, it's an interpretation. It's consistent with an innocent explanation. And I don't think that just because there can be 1. You can't exclude the other 1 automatically. It's not like, could this have a pornographic imitation? But if there's. If there's 2 different interpretations that are both reasonable, I think the tie should go to the runner. You know, I got you. Thank you. With respect to the possession, does the possession have to be exclusive? No, it doesn't have to be exclusive, but here the problem with the possession and I'm glad you brought this up. The trial court found there was no evidence of actual possession at all. Absolutely. Right. The state abandoned that argument and they said their whole argument is like, there's actual possession. So, it doesn't have to be exclusive, but you have to show the person knowingly possessed it. And there's no indication that in that sea of images where devices were loaded on from the girls from the husband. Other than devices, Kelly, there's nothing that links Kelly Nichols to any of the devices. That that took those photos, there was not any specific linking them to them. Was the trial court here evidence that these folks in the household were freely exchanging devices and using each other's devices? Exactly, and that even makes it worse. And again, this is the important point and Justice Clark. I really, I hope I can make I hope I have the ability to make this point. It's not about whether Kelly Nichols could have been the one. Or could have possessed it. She's got to have done it. And courts have said that when you have basically what's in effect mere presence. And that's what this basically is mere presence. You have to show even if it's an opera, even if someone has an opportunity, that's not enough. What you have to show is they have to have, but the opportunity and the state has to show that no one else did it. That's what the law says, and here they can't do that. They can't do that in the manufacturing. They can't do that on the possession. It means any one of these images could have dripped in from any number of different sources. You had eight grandparents in this case. You had babysitters. Any of them could have taken it. The husband was the one who sometimes did all the transferring, but he also had to. We know now that the older daughter, Kylie, did a lot of her own transferring. You know, it's just there's a lot of things. And it's not like the police haven't done this in other cases where they go in and they look at search histories. They look at how the computer was being used or the device was being used when the photo was taken. They talk to the people. They do admissions. They do good, solid police work to shore up that knowledge element. And I'm not saying Detective Matthews didn't do good work, but none of that's present here. Appreciate you taking the time to answer my questions. I hope I did, and I tried the best I could. Thank you. Justice Vaughn, any follow-up questions? No questions. Thank you. Mr. Robson, you'll have time in rebuttal. Ms. Kuhn. Good morning, Your Honors. Good morning, Your Honors. Katrina Kuhn for the people of the state of Illinois. May it please the court. To start off with the reasonable doubt. And again, Your Honors are very familiar with the standard that you look at the evidence in the light most favorable to the state. The review here is limited to the trial evidence, and no one at trial testified as to who took a particular image. The defendant didn't testify what she took. The daughter didn't testify that she took the video. What the defendant did say was that she took videos and photos of the children every day, and the other family members agreed. She admitted taking photos of her new children. There was never a point in their lives when she stopped taking videos of them. She was asked for the first time on redirect whether she took the pogo stick video, and she said she did not recall taking it. And it is the trial court's role to resolve conflicting evidence. And I disagree with Mr. Robertson that the state has to show that no one else took something. The state doesn't have to disprove evidence. The state doesn't have to exclude all other options that are consistent with the defendant's innocence. That is black letter law. And again, you know, the mother didn't deny taking the video. So, really, what the trial court here was faced with was, you know, competing inferences, and it was the court's role to resolve any conflicts. Now, as to Detective Matthews, Detective Matthews wasn't there. He couldn't say who took the video. I think what Mr. Robertson is referring to is when the detective was asked about his earlier police report, and he was indicating what he had written there, and he was indicating that, you know, it was possible that the daughter took the video. And again, as your honors have noted, there was also testimony here that the phones and the cameras in the household were used by all of the different family members. And there was also evidence that the defendant herself used the iPhone 5S, and she was shown in a mirror in one of the pictures taking that. Excuse me. Now, you know, Mr. Robertson also talked about how these were 0.002% of all the images. It doesn't matter if it was one image. You know, you don't get a – there's not a de minimis standard here. It doesn't matter if it was six images out of a million. They were still six images that met the standard of child sexual abuse material. And there was also testimony that there were – there was – again, there was evidence the mom had used the different devices. I also want to talk about propensity. The people are not saying, and they've never said, that the defendant is a bad person, so she must have taken these images. The inference is that this defendant admitted taking images, photos, and videos of her naked children throughout their lives, and she admitted to posing them in some of these images. And she took all of these other photos, and there were a number in tens of thousands. The people are not using an improper propensity inference. They're using a logical propensity inference. Then the trial court, again, can convict a defendant even if it's faced with conflicting evidence. I'm sure your honors have seen, you know, very few cases where there hasn't been conflicting evidence. It's the trial court's prerogative to resolve that evidence. And I'd like to also talk a little bit about possession. There was ample evidence of possession, even if the victim – I'm sorry, even if the defendant never denied ever seeing these images. You've all taken images, pictures on your phone or a camera. You look at the camera to see after you've taken the image to see it. It's unreasonable to say that you are not aware of pictures that you've taken and pictures that are on devices that you've taken. And also, to Mr. Robertson's point about there was no evidence found of child websites, child pornography, et cetera, they didn't need to do that. They had child pornography being created in their home. It doesn't matter. They were not charged with disseminating it. They were not charged with sending it to anyone else. That is not a charge here. They were charged with manufacturing it and possessing it. And I want to also, if I may, talk about lewdness. Your honors discussed the land borne factors in cobalt, and a couple of – your panel was on the panel in cobalt, which is cited in my brief. And nudity is a consideration as to lewdness. You actually consider whether – that's one of the main considerations is whether there is nudity. And as to the bed photo, there was no indication that changing was going on. And in the toilet paper photos, the daughters were looking at the camera. They were in the living room. They weren't anywhere near a bathroom. It seems very, very suspicious that they were posed in the same manner and in a different situation. If I may discuss the ineffective assistance argument, the theory at the outset of this case was that these images are not lewd. That's a perfectly viable defense theory that Attorney Wessler presented at trial. That would cut everything else off at the knees, so it's reasonable that counsel would have used that theory. And in considering ineffective assistance, you look at the events at the time of counsel's conduct, and you have a heavy – there's a heavy deference toward counsel's judgment, and you consider all of the circumstances. And also, Attorney Wessler can't be faulted for offering evidence that he couldn't – that was not at his disposal at trial. And Kylie – it was clear from the post-trial motions that Kylie was not willing to testify at trial about a pogo stick video, and Attorney Wessler testified as to that. So you need to have an unreasonable defense theory, and this was not unreasonable at the time. The attorney has to work with what he has given. I believe that's all I wanted to cover. Are there any questions I can answer for your honors? I have a question on the pogo stick video.  Would you concede that, as far as manufacturing, that is maybe a weak link in this? It's not clear who took the video. There's some testimony it was one of the kids' phones, and a manufacturing count being assessed to the mother doesn't seem – possession maybe is a different thing, but manufacturing in that instance seems questionable in my mind. Well, the defendant never denied taking the video. The whole theory at trial – everyone seemed to have convenient amnesia at trial about this video. No one could recall anything about it. The daughter couldn't recall what happened. No one could recall the subject of the video. The younger daughter couldn't recall who took it. The people are not conceding in any way that that defendant did not take it. The defendant can't prove a fact by all these denials. She can't prove that she didn't take the video by the fact that everyone else is presenting denials. She's not required to prove anything, is she? No, Your Honor, but the absence of evidence is not evidence. The defendant can't look to evidence that wasn't presented and then say, oh, that shows that I did or didn't do something. Yes, Your Honor. I didn't mean to say the defendant is required to prove anything. I was just required to say that denials don't show who took it or who didn't take it. I'm just struck by the – now correct me if I'm wrong. Didn't the trial court find her – acquit her of permitting the manufacturer? Didn't that happen? Yes, yes, that did happen. So you've got a defendant who is acquitted of permitting it to happen and the state's witness saying it was likely the daughter who took it, and you put those two things together, isn't that a problem for the state? No, I mean, the defendant's witness, I think you're talking about Detective Matthews.  Yes, who is the only person who, you know, offered any opinion. And again, he was not there. He was looking at records and recovery of video and photos. The trial court, you know, made a specific finding and addressed the – and found that defendant didn't deny taking the video. And again, page record 534 are the trial court's findings, and they should be heavily deferred to. And again, if the daughter took the video, there was no – you know, the daughter didn't testify at trial. This is limited to the evidence that was presented at trial. Even in the post-trial affidavit of the mother, she didn't say that she – she didn't say who took the video. Even in the post-trial affidavit, the mother didn't say anything about who took the video. So, the trial court – you have to look at the evidence that the trial court was presented with. With respect to the ineffective assistance of counsel claim, please correct me if I'm wrong, didn't the trial court make some pretrial rulings as to what was lewd and what was not? The trial court did make pretrial rulings, and that actually shows the measure of care and analysis that the trial court took, because the trial court, I believe, denied the motion to dismiss as to certain counts and found that other images weren't lewd. So, it kind of filtered through and said we're going to – that a reasonable trier of fact could find that these images are lewd, and those were the ones that proceeded to trial. Thank you. Yes. Any other questions? Okay, thank you for your arguments. Mr. Robinson? I'm still muted. You're on mute right now. Thank you so much. First, just finishing off the manufacturing video, in contrast to what Ms. Kuhn said, it wasn't that Detective Matthew said it was possible. He said it was likely. And the fact that even in the idea that we have to defer to the trial court, I get the trial court's factual finding ability, but we have tons of evidence here that show that Kylie didn't take – that Kylie took this video and it was not Kelly. That doesn't mean the trial court is giving carte blanche to go off on its own and just say I'm going to reject all this evidence and just decide someone else took it. The idea that – I want to correct some things that Ms. Kuhn said. She made it appear like Ms. Nichols admitted – well, she said it in a brief – that Ms. Nichols admitted taking daily nude photographs of her kids. That is absolutely not true. She admitted to taking some unidentified number. Unidentified. We don't know how many. It could have been one. It could have been two. It could have been the ones that the judge has already thrown out as not nude. That's all she admitted. She admitted taking photos daily or photos every day. And she admitted taking some photos, not all, where the kids were posed. Like any normal family who's taking 100,000 photos – wait, hold it there, smile, you know, boom. But when it comes to taking daily nude post photographs, that was specifically denied by everyone. It was completely out of character, denied throughout. I don't know how the state and the trial court takes a denial or an I don't remember and crafts that into an affirmative fact showing that someone did something or possessed something. Listen, I'm not saying that there's no recantation here. There's no changing of any testimony. I'm not using testimony from the post-trial motion. I'm saying look at the evidence that was offered at trial, and it fails miserably. You know, this idea that, you know, look, other people had access to the devices. Therefore, Ms. Nichols could have used these devices. Yes, and the exact same inference is present going the other way, which means anyone in the house could have done it. You just can't go eeny, meeny, miny, moe and pick a defendant out to convict. You have to show, and I didn't say that the state has to exclude every reasonable possibility of innocence. I never said that in my brief. What I said is you can't convict someone based on mere presence. You can't convict someone of possession of contraband based on mere presence of contraband, even if it's in their home. You have to have some additional evidence to exclude, in terms of the making of the video, everyone else who could have made it. Here we have Kylie could have done it. Kelly could have done it. The state didn't knock down Kylie. How can you have that? In terms of the possession, the state makes it appear like I'm trying to make some de minimis argument, and nothing could be further from the truth. One picture of true child pornography, true lewd, that's enough. If you can show that the person knew it was there. Here, when I'm talking about millions of files, 100,000 images, that's how can someone go through all those? What I'm saying is it's not like this was a screensaver. It's not like it was laying out. It's not like it was on someone's phone. This is tucked away in a shared device where tons of people were dumping images on it. And quite frankly, there's testimony that Miss Nichols was computer, not illiterate, but she was like a Luddite, much like myself, where basic operations were done by everyone else. It was just basically like, hey, the camera's full, and it could have been the daughters. It could have been Miss Nichols. It could have been filled up by other people because tons of people had access to these devices. You have to have knowing possession. There has to be knowing procurement, knowing receipt. Can I have one second to address the ineffective assistance council issue? I'm sorry. Yes. I'll be brief, guys. I'm sorry, Your Honors. The point with the ineffective assistance is not me attacking the strategy of the landborne factors weren't a good spot to plant your flag on because, quite frankly, I think that's also a winning argument. My point was this. When you have information that is dispositive, in the taking of the video it was, whose phone it was, who's being used at the time, in the possession, it was that some of these files were not visible, viewable, or accessible by anyone without law enforcement personnel. You couldn't see on them. You couldn't find them and pull them up if you wanted to. When you have that kind of dispositive evidence that negates an element and you don't run that ground ball out, you can't hide behind strategy when that's the case because you really haven't flushed out that aspect in order to make a strategic decision. It's not like it was the council stumbled down the wrong fork in the road. I'm not saying that. What I'm saying is great first defense, but when you have a second line of defense that conclusively negates an element, there's no reason why you should ever leave that on the ground, especially for the purported reason here, which was I thought that it was a slam dunk, not guilty, so I didn't bother with it. Wasn't there a discussion between attorney and client about not wanting to point fingers at other people in the household? I mean, I think post-trial, wasn't there some discussion about, hey, Kylie, if you say you took the video, you could be prosecuted? I mean, wasn't that a legitimate strategy, not to want to point fingers at anybody else in the house? Your Honor, there was testimony to that effect, no question. I think that's a major problem for when you're abdicating your client's interest over someone else's interest. And someone else was a 13-year-old child at the time who never would have been charged as an adult, couldn't have been charged as an adult at the time with any of this. I'm not saying she couldn't. I'm saying wasn't that in the record that there was some discussion about that? Absolutely, there was a consideration, and that would be a slightly different way of a failing of ineffective assistance like not challenging a critical element because you were worried about someone other than your client. What if that was your client's wish? Then if the client wasn't properly involved, because there was no way in the world a 13-year-old was going to get charged with this type of offense. Thank you for answering my question. Thank you. And thank you all very much for this opportunity to appear on Zoom. I greatly appreciate it. Again, we'd ask that all convictions against Ms. Nichols be reversed outright. Thank you. Okay, thank you. Thank you both for your arguments here today as well as the briefs. The court will take this matter into consideration and issue its ruling in due course.